STATE OF IOWA ex rel. BOARD OF RAILROAD COMMISSIONERS, Appellant, v. GEORGE W. MERCER et al., Appellees.

No. 41745.

JANUARY 17, 1933.

J. H. Henderson, Commerce Counsel, Stephen Robinson, Assistant Commerce Counsel, and H. M. Ofelt, County Attorney, for appellant.

Seerley, Clark & Hale, and D. C. Nolan, for appellees.

MITCHELL, J.—The appellee, George Mercer, is a resident of Burlington, Des Moines County, Iowa, and the Mercer Transfer & Storage Company is a corporation with its offices and principal place of business located at Burlington. The Mercer Transfer & Storage Company is a motor operator, holding a permit as such issued by the board of railroad commissioners under Chapter 252-C1 of the Code of Iowa 1931.

The appellant, in its petition, alleges that the appellees are now, and have been since on or about June 1, 1931, operating a motor vehicle or vehicles for public transportation of freight for compensation between fixed termini or over a regular route, without procuring a certificate of convenience and necessity from the board of railroad commissioners of the state of Iowa, as provided in Chapter 252-A1, Code of Iowa 1931, and without paying a motor carrier tax as provided by Chapter 252-A2, Code of Iowa 1931; and that the operation of said motor vehicles by the appellees between Burlington and Keokuk and points intermediate thereto results in an unlawful and unauthorized use by them of the public highways. Appellant asks that the appellees be enjoined from operating over the highways of the state as motor carriers between Burlington and Keokuk. The appellee George W. Mercer answered by a general denial, and the appellee Mercer Transfer & Storage Company answered by a general denial, and averred, in substance, that it has been operating a truck line for its own convenience and for public transportation as a contract or private carrier, and that said operations have been in all cases under license and permit issued by the board of railroad commissioners under Chapter 252-C1 of the Code of Iowa, except for the route between the cities of Fort Madison and Davenport, Iowa, over U. S. Highway No. 61, for which route the appellee Mercer Transfer & Storage Company has a franchise or permit issued by the board of railroad commissioners under the provisions of Chapters 252-A1

and 252-A2, and said appellee denied that it has been guilty of any violation of any provision of said chapters and asked that the petition be dismissed at appellant's cost.

In the very recent case of State ex rel. Board of Railroad Commissioners v. Ooten, 215 Iowa 543, the law in cases of this kind has been well settled by this court. We said:

"To one operating under the latter chapter (252-C1, Code 1931), a permit is granted and a fee of $5 is charged. One who operates under the first-named chapter (252-A1 and 252-A2, Code 1927) is subject to a certificate of convenience and a tax or license fee imposed. Chapter 252-C1 is later legislation than Chapter 252-A1. The distinction made as between the two kinds of operators is one that can become exceedingly difficult of practical application. A truck operator, who operates between fixed termini and on a regular route, is readily identified. But when one operates upon any and all routes, and between any and all termini, it becomes a question of degree whether sooner or later his business may not concentrate upon a regular route and two fixed termini. As between two termini there can hardly be other than a 'regular route,' if the distance be short."

It becomes necessary at this point to refer to the testimony in this case. The record shows that the Mercer Transfer & Storage Company is a corporation operating a public warehouse at Burlington, Iowa, and also operating as a common carrier between Burlington and Davenport and Burlington and Fort Madison, under a permit issued by the board of railroad commissioners of the state of Iowa, and that it operates a general transfer and storage business and hauls merchandise to all parts of the state, and outside of the state, for various concerns. It has contracts with four merchants in Keokuk to haul freight for them between Keokuk and Burlington. The Mercer Transfer & Storage Company runs trucks between Burlington and Keokuk, and the trucks leave Burlington with shipments of freight or merchandise for various concerns in Keokuk. The testimony shows that these trucks use U. S. Highway No. 61, and when they reach Keokuk they make delivery of the freight to the various wholesale houses and manufacturing concerns, and then pick up at Keokuk freight for Burlington and intermediate points. The record shows that this service has continued over a long period of

time. On some days one truck operates; on other days several trucks operate.

A fair description of the business that the Mercer Transfer & Storage Company is doing is contained in the testimony of the wit-- ness B. C. Drury, and is as follows:

"I made an investigation on January 22, 1932, and made a memorandum on that date as to the result of the investigation. I followed the Mercer truck from Burlington to Keokuk and checked it at Fort Madison. It had on it packing house products, batteries, and overalls. The overalls were billed to Fort Madison and the bat- teries to Keokuk, and I made no complete check as to the destination of the packing house products. I made an investigation of the Mer- cer trucks in May, 1932, and on May 23rd I checked the contents of the Mercer truck at Keokuk. It contained shipments from the Cudahy and Swift Packing Companies; also tires, canned goods, and re- frigerators. The tires were billed to the Sunshine Oil Company from Wuellner's and the canned goods were billed to the A. & P. Stores at Keokuk and the refrigerators to the Keokuk Refrigerator Com- pany. On May 26th I followed the Mercer truck from Burlington to Keokuk and it travelled over U. S. Highway No. 61 and I checked the contents of the truck at Keokuk and when it arrived at Keokuk it had merchandise for the A. & P. Stores and some tires from the Firestone Company. I checked the Mercer truck on June 13, 14, and 15 and on June 13 I followed the truck from Burlington to Keokuk and the truck travelled over U. S. Highway No. 61. I checked the contents of the truck at Keokuk and when it arrived there it had meat from Cudahy and Armour and a shipment of varnish and chairs from Davenport. The delivery was made to the Sherwood bake shop. There was also a shipment from Dubuque consigned to C. S. Able at Keokuk. On June 14, 1932, I checked the Mercer truck and followed the truck from Fort Madison to Keokuk and checked the contents of the truck in front of the Sunshine Oil Station at Keokuk. There was sugar, baskets and disinfectant and coffee and also tires on the truck. The sugar was billed to the Shoutens Bakery, Keokuk, and there were thirty bags. The coffee was billed to Hill Brothers or Sinton's Transfer. The tires were billed to the Diamond Tire Service at Keokuk. The route followed from Fort Madison to Keokuk on June 14 was U. S. Highway No. 61. On June 15 I checked the operation of the Mercer trucks and checked the contents between

Montrose and Fort Madison and that was on U. S. Highway No. 61. There were seven cases of coffee from the Paxton-Gallager to Paxton-Gallager, % Sinton Transfer at Keokuk. The shipment from the Firestone Tire Company at Davenport to the Diamond Tire Service, Keokuk, consisted of a bundle of four tires and seven bundles of tire tubes, and a shipment consisting of 10 tires from Schaunberg Tire Company, Burlington, and another bill of ten rubber tires from the same consignor to the same consignee."

The Mercer Transfer & Storage Company solicited business at Keokuk from wholesale houses and the manufacturing institutions at Keokuk for transportation to Burlington. It had a contract with a concern at Davenport that solicited business for transportation by the Mercer Transfer & Storage Company between Keokuk and Burlington. Its trucks made almost daily calls at the manufacturing concerns and wholesale houses in Keokuk. The route which was followed by the Mercer trucks between Keokuk and Burlington and Burlington and Keokuk was U. S. Highway No. 61. There was a fixed tariff of charges for transportation between Burlington and Keokuk, and the charge was not made for time consumed or difficulty encountered in making delivery, but the Mercer Transfer & Storage Company had filed a schedule of its charges for the hauling of freight between Burlington and Keokuk. The drivers and employees of the Mercer Transfer & Storage Company had instructions to pick up freight from the various wholesale houses and manufacturing places in Keokuk for delivery to Burlington. During the months of December, 1931, and January, February, May, and June, 1932, employees of the railroad commission followed the trucks of the Mercer Transfer & Storage Company and checked the merchandise hauled by the Mercer Transfer & Storage Company between Burlington and Keokuk and Keokuk and Burlington, and on all of these occasions the Mercer Transfer & Storage Company hauled freight for a great many wholesale houses from Burlington and Keokuk.

In the case of State ex rel. v. Ooten, supra, this court says:

"The fact that the defendant was a permit holder under chapter 252-C1 does not give him a permanent status as such. The very development of his business may result in imposing upon him the status created by chapter 252-A1, notwithstanding his original classification."

It seems to us that the evidence in this case shows that the ap-

pellee Mercer Transfer & Storage Company had a predetermined plan relative to trips between Burlington and Keokuk. Trips were made practically daily. The route followed was Highway No. 61. The Mercer Transfer & Storage Company solicited business at Keokuk for transportation to Burlington. It had a fixed charge for hauling freight between Burlington and Keokuk. It had contracts with various wholesale houses and manufacturing concerns for handling their shipments between Burlington and Keokuk. The route of the appellees was a regular route. The termini were fixed at Burlington and Keokuk. The Mercer Transfer & Storage Company, as truck operators, used their motor trucks between fixed termini, or over a regular route within the meaning of Chapters 252-A1 and 252-A2. The mere fact that the Mercer Transfer & Storage Company was a permit holder under Chapter 252-C1 does not give it a permanent status. Its business has developed and it clearly comes within the meaning of the statute created by Chapters 252-A1 and 252-A2.

The record does not show that the appellee George W. Mercer owned or operated any trucks. His only connection with the operation of the trucks was that of president and general manager of the Mercer Transfer & Storage Company, and the appellant is not entitled to any relief as against George W. Mercer.

The judgment of the lower court is, therefore, affirmed as to the appellee George W. Mercer, but as to the appellee Mercer Transfer & Storage Company this cause is reversed and the cause remanded to the lower court.—Affirmed in part; Reversed and remanded in part.

KINDIG, C. J., and EVANS, STEVENS, ALBERT, ANDERSON, and KINTZINGER, JJ., concur.